UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAMELA ZEIGER,

                          Plaintiff,

-against-                          **COMPLAINT**

                                            **JURY TRIAL DEMANDED**

ARAMARK CORPORATION, JOSEPH
NEUBAUER and JACOB D'OTTAVIO,
in their individual and official capacities,

                          Defendants.
-------------------------------------------------------------X

        Plaintiff PAMELA ZEIGER, by and through her attorneys THE LAW OFFICE OF BORRELLI & ASSOCIATES, P.L.L.C. complaining of the Defendants, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. This civil action is brought to redress Defendants' adverse employment actions against Plaintiff in the terms, conditions and privileges of employment. Plaintiff seeks equitable, and injunctive relief and monetary damages based upon Defendants' violations of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, ("FMLA"); the New York State Human Rights Law, Executive Law Section 290 *et seq.* ("NYSHRL"); intentional infliction of emotional distress and any other cause(s) of action that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331, 29 U.S.C. 1132 and 28 U.S.C. 1343 and the aforementioned statutory provisions. The court has jurisdiction over the state law claim under the doctrine of pendent or supplemental jurisdiction 28 U.S.C. § 1367 (a).

3. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391 because one (1) or more of the defendants resides or conducts business within this judicial district and because the actions giving rise to the claims occurred within the District.

## PARTIES

4. At all times hereinafter mentioned, Plaintiff, PAMELA ZEIGER ("Plaintiff"), was a resident of the County of Suffolk, New York.

5. At all relevant times hereto Plaintiff is disabled within the meaning of the NYSHRL.

6. At all relevant times hereto, Plaintiff was an eligible employee under the meaning of the FMLA.

7. At all relevant times hereto, Plaintiff was entitled to leave under the FMLA.

8. At all relevant times hereto, Defendant, ARAMARK Corporation ("Aramark") conducts business in New York and was and still is a domestic corporation organized under the Laws of the State of Pennsylvania with a principle place of business located at 1101 Market St., Philadelphia, Pennsylvania, 19107.

9. Defendant Aramark is an employer within the meaning of the NYSHRL in that it employs four (4) or more employees.

10. Defendant Aramark is an employer subject to the requirements of the FMLA.

11. At all times relevant hereto, Defendant JOSEPH NEUBAUER ("Neubauer") was/is the chairman and chief executive officer of Aramark Corporation and is the person primarily responsible for overseeing the daily operations of the company, for making hiring and firing decisions, and for making sure that each employee of Defendant Aramark are not discriminated and/ or retaliated against.

12. At all times relevant hereto, Defendant JACOB D'OTTAVIO ("D'Ottavio") was/is the District Manager for Aramark Corporation in Nassau and Westchester Counties, New York, is an agent for Aramark, served as Plaintiff's supervisor and is the person primarily responsible for overseeing the daily operations of the company in Nassau and Westchester Counties, for making hiring and firing decisions in Nassau and Westchester Counties, and for making sure that employees of Defendant Aramark in Nassau and Westchester Counties are not discriminated and or retaliated against.

## STATEMENT OF THE FACTS

13. In or around February 2005, Plaintiff began her employment at Aramark as an Assistant Food Service Director in Aramark's Port Washington, New York site.

14. In or around January 2007, Plaintiff received a promotion to Food Service Director in Aramark's Malverne, New York site.

15. During the course of her employment with Defendant Aramark, Plaintiff performed her duties in an exemplary manner, and never received any disciplinary action against her.

16. In or around June 2008, Plaintiff was constructively discharged due to the harassment and poor treatment she endured at the hands of Renu Sethi ("Sethi") the former District Manager of Nassau County.

17. In June 2008, Plaintiff accepted a position with Aramark's competitor Whitsons Culinary Group.

18. In or around July 2008, Sethi was terminated from the position of District Manager of Nassau County.

19. In or around, July 2008 D'Ottavio became the District Manager of Nassau County NY, which is in addition to his District Manager position in Westchester County, NY.

20. In February 2009, Plaintiff resigned her position with Whitsons Culinary Group and was rehired by Defendant Aramark as an Assistant Food Service Director at the Aramark's Port Washington, NY site.

21. Plaintiff's job responsibilities dealt mainly with school districts, thus she was off for the months of July and August.

22. In March 2009, Plaintiff informed Defendant D'Ottavio that she needed to have back surgery because of her scoliosis.

23. Plaintiff provided sufficient notice to Defendants and requested that she be permitted to take extended time off from work to recover from her serious medical condition.

24. Defendants failed to advise Plaintiff of her rights pursuant to the FMLA.

25. Defendants interfered with Plaintiff's benefits to which she was entitled under the FMLA.

26. Defendants failed to post the required notice to inform the Plaintiff of her rights to receive FMLA leave and thus interfered with her rights under the statute.

27. Scoliosis is a protected disability within the meaning of the NYSHRL

28. Scoliosis is a disorder that caused an abnormal curve of Plaintiff's spine.

29. Plaintiff suffered daily with chronic pain due to her disabilities.

30. Scoliosis has significantly affected the quality of Plaintiff's life by substantially limiting her ability to walk, take care of herself and perform manual tasks.

31. As a result of her Scoliosis, Plaintiff developed Kyphosis, which is a curving of the spine that caused a bowing or rounding of the back, and caused her to hunch forward. If left untreated, it would eventually crush her lungs and heart.

32. Plaintiff's condition has caused a diminished self-esteem because Plaintiff's body was changing, shifting and causing her to develop a lump on her back.

33. The continuous chronic pain, has taken a major toll on Plaintiff's emotional and psychological well being.

34. Defendant D'Ottavio requested that Plaintiff delay her surgery until the summer of 2009 in order to minimize her time off from Aramark.

35. Although Plaintiff was in continuous chronic pain, she reluctantly agreed to delay her surgery.

36. On or about July 23, 2009 Plaintiff had spinal fusion back surgery at Columbia University Medical Center.

37. In August 2009, Defendant D'Ottavio assured Plaintiff that her job was safe.

38. The recovery time for spinal fusion surgery is typically one (1) year.

39. Plaintiff only requested leave from September 2, 2009 through October 26, 2009 in order to minimize her time away from work.

40. In or about October 2009, Plaintiff's doctor cleared her to return to work but in a restricted capacity.

41. Plaintiff's doctor precluded her from lifting, twisting or bending for the next three (3) months.

42. On October 26, 2009, Plaintiff returned to work in part time status.

43. In addition to scoliosis, Plaintiff has endometriosis.

44. Endometriosis is a protected disability within the meaning of the NYSHRL.

45. Plaintiff has had approximately 18 surgeries to treat the endometriosis.

46. A few of the surgeries occurred while Plaintiff was employed by Defendants.

47. Defendants were aware of Plaintiff's disability caused by the endometriosis.

48. The endometriosis caused Plaintiff chronic pain and large cysts in her ovary and pelvic areas.

49. On November 2, 2009, Plaintiff was rushed to the hospital and received emergency surgery due to a burst cyst on her ovary.

50. The burst cyst was directly caused by the endometriosis and caused bleeding, pain, nausea and vomiting.

51. Plaintiff requested one (1) week leave due to this serious medical condition.

52. Defendants again, failed to advise Plaintiff that she was entitled to leave pursuant to the FMLA.

53. Prior to her return from her serious medical condition, Plaintiff was informed that she must speak to Defendant D'Ottavio before returning to work

54. Because of her condition, Defendant D'Ottavio informed Plaintiff that her services were no longer needed in the Port Washington site.

55. Plaintiff's position at the Port Washington site was given to a non-disabled male.

56. On or about November 9, 2009 Plaintiff met Defendant D'Ottavio at the Franklin Square site to discuss her future with Defendant Aramark.

57. Defendant D'Ottavio stated to Plaintiff that she was being transferred because she has been out of work too often because of her disabilities.

58. On or about November 9, 2010, Plaintiff requested that she be permitted to return to the same or similar position that she held prior to her disability leave.

59. Plaintiff also requested that she be placed back to the Port Washington site, to avoid the extra travel and constant moving around, which exasperated her spinal injury.

60. On or about November 9, 2010, Defendant D'Ottavio denied this request without engaging in any interactive process and stated that she was "lucky" to still even have a job.

61. Defendant D'Ottavio advised Plaintiff that she will not be assigned to one work site, that she will be a "fill in," filling in for other managers when they are out sick or on vacation.

62. The duties that Plaintiff performed prior to her medical leaves changed significantly when she returned to work.

63. Plaintiff was required to travel more often than if she had not been transferred.

64. Plaintiff's assignments were sometimes daily and or weekly depending on how long the manager was out in that particular district, *i.e.* the work was not constant.

65. At times, Plaintiff acted as a Food Service Director, a more senior and higher paying position, while she received compensation as an Assistant Food Service Director.

66. Plaintiff was also assigned tasks from administrative work to training other Food Service Directors.

67. Plaintiff was given an ultimatum that she accept the transfer and new job responsibilities or be terminated.

68. Regardless, plaintiff performed her new job duties in a satisfactory manner.

69. In or about January 2010, Plaintiff was qualified but was passed up for a promotion due to her disabilities.

70. Plaintiff was asked by Defendant D'Ottavio to train the person who eventually got the promotion.

71. In or about December 2010, Plaintiff's tasks became more physically demanding.

72. Plaintiff complained to Defendant D'Ottavio that she was experiencing pain and difficulty performing the tasks but was required to perform the physical tasks. In other words, Plaintiff reiterated her request for a reasonable accommodation.

73. In March 2010, Defendant D'Ottavio advised Plaintiff that Aramark no longer had work for her and terminated her employment.

74. Plaintiff was terminated without cause.

## FIRST CLAIM AGAINST DEFENDANTS
### (FMLA – Violations)

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76. On or about September 2, 2009, Defendant unlawfully interfered and restrained Plaintiff's exercise of rights provided under the law in violation of the FMLA.

77. The conduct of Defendants was done in willful disregard of Plaintiff's rights.

78. Plaintiff is entitled to equitable and injunctive relief requiring Defendants to re-employ Plaintiff, an award of back pay and front pay in the form of lost wages, benefits, interest, compensatory damages, liquidated damages, punitive damages and reasonable attorney's fees.

## SECOND CLAIM AGAINST DEFENDANTS
### (Violations of the NYSHRL § 296)
### **_Failure to Reasonably Accommodate, Disability Discrimination and Retaliation_**

78 Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

8

79. Plaintiff is an employee and a person with a qualified disability within the meaning of the NYSHRL.

80. Plaintiff suffers from a severe form of scoliosis that limits her ability to walk, sit for extended periods of time, which is to say that it limits her ability to perform major life functions.

81. In addition to scoliosis, Plaintiff has endometriosis that cause, among other things, severe pain and discomfort, and limits her ability to perform major life functions.

82. Plaintiff, despite her disability, with reasonable accommodation, is capable of performing the essential functions of her job.

83. Plaintiff engaged in protected activity as defined by the NYSHRL as delineated above.

84. Plaintiff requested from Defendants a reasonable accommodation and Defendants failed to reasonably accommodate Plaintiff, even though accommodating Plaintiff would not have been an undue hardship on Defendants.

85. Defendants D'Ottavio and Neubauer aided, abetted, incited, compelled or coerced the discrimination and retaliation against Plaintiff.

86. Defendant Aramark discriminated and retaliated against Plaintiff via the adverse employment actions as thoroughly detailed above in violation of the NYSHRL.

### THIRD CLAIM AGAINST DEFENDANTS
*Disability Discrimination,*
*Failure to Engage Plaintiff in the Interactive Process in Violation of the NYSHRL §296*

87. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88. Plaintiff is an employee and a person with a qualified disability within the meaning of the NYSHRL.

89. Plaintiff suffers from scoliosis and endometriosis, which limits her ability to walk, which is to say it limits her ability to perform major life functions.

90. Plaintiff's disabilities was/are known to Defendants.

91. Defendants failed to respond or engage Plaintiff' in interactive discussion concerning a reasonable accommodation(s) for her disabilities.

92. Defendants refused to enter into an interactive process of negotiation in violation of the NYSHRL.

93. Defendant acted intentionally and with malice and reckless indifference to Plaintiff's federally protected rights.

94. The individual Defendants, aided, abetted, incited, compelled and or the aforementioned unlawful conduct in violation of New York State Executive Law § 296 (6).

### THIRD CLAIM AGAINST DEFENDANTS
*(Intentional Infliction of Emotional Distress)*

95. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96. Defendant, by the actions described herein exhibited extreme and outrageous conduct.

97. In undertaking the aforementioned actions, Defendant intended to cause Plaintiff severe emotional distress.

88. The aforementioned conduct has caused Plaintiff severe emotional distress and mental anguish.

89. As a proximate cause of Defendant' acts and an omission, Plaintiff has in the past and will in the future suffer damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against Defendants as follows:

1. Enter a judgment declaring that Defendants' patterns, practices and omissions, as described above, in retaliating against Plaintiff for her exercise of her constitutional rights violates the law;

2. Enter a judgment and award in favor of Plaintiff and against Defendants for reasonable monetary damages, including back pay (plus interest or an appropriate inflation factor and enhancement to offset adverse tax consequences associated with lump sum receipt of back pay), front pay, benefits and all other damages owed to Plaintiff in an amount proven at trial, resulting from Defendants' unlawful and discriminatory acts or omissions;

3. Enter a judgment and award in favor of Plaintiff for the compensatory, punitive, exemplary and liquidated damages available under all applicable Federal, State, and Local laws;

4. Enter a judgment and award in favor of the Plaintiff for costs, including, but not limited to, reasonable attorneys' fees, experts' fees, and other costs and expenses of this litigation;

5. Enter a judgment and award in favor of Plaintiff for pre-judgment and post-judgment interest;

7. Award such other and further legal and equitable relief as may be found appropriate and as this Court may deem just and proper; and,

11

8. Retain jurisdiction over this action until such time as it is satisfied that Defendants have remedied the practices complained of and is determined to be in full compliance with the law.

Dated: Carle Place, New York
May 13, 2011

Respectfully Submitted,

By: _____
PETER J. FAMIGHETTI, (PJF 4064)
MICHAEL J. BORRELLI (MB 8533)
The Law Office of
BORRELLI & ASSOCIATES, P.L.L.C.
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel. (516) 248 – 5550
Fax. (516) 248 – 6027